The next case for oral argument this morning is 21-2385, U.S. v. Thayer. I'm going to turn it over to Ms. Stelgis. The State of Minnesota convicted Thomas Thayer of fourth-degree sexual conduct and notified him of his obligation to register as a sex offender. He was later discovered living and working in Wisconsin, where he allegedly failed to update his registration. A grand jury indicted Thayer for violating the Federal Sex Offender Registration and Thayer's Minnesota conviction did not meet SORNA's definition of sex offense. This appeal raises a single issue. What approach to use when determining whether Thayer's conviction meets SORNA's definition of sex offense in 34 U.S.C. 20911-5A2, which defines that term as a specified offense against a minor, and the nested definition of specified offense against a minor in 7I, which defines the term as an offense against a minor that involves any conduct that by its nature is a sex offense against a minor. There seemed to be confusion below as to whether or not 5.1 or 5.2 applied here, because the everybody agrees is not the correct section, and the district court touched on that. That's correct, and on this appeal we're only arguing under 5A2. The language in 5A2 and Section 7I calls for a non-categorical, circumstance-specific approach. Unlike that definition in 5A1, which applies to all sex offenses, not just those against a minor, it does not use the word elements. This indicates that Congress wanted a circumstance-specific, non-categorical approach. Well, that alone doesn't indicate it, does it? Because you have criminal offense, which the case law has said can go either way. So I don't know that you could say that's dispositive, that elements is not used in Subsection 2 when offense is. I agree that it's not dispositive, but that's not the only textual clue. When you turn to the language in 7I, that provision specifically references conduct, which indicates that Congress wanted the fact finder to consider what the defendant did on the prior occasion, not the elements of the offense. So what should we do with, and I wish we had a screen here I could show you, because I know the statute is a bit confusing. So I'm looking at 7I, which defines specified offense against a minor. And you are correct that I itself says any conduct that by its nature is a sex offense against a minor. But the introductory language says that the term specified offense against a minor means an offense against a minor. What do we do with that offense that's in the introductory language to 7I? I don't think we can ignore that and jump right to conduct, which is in 7I, if that makes sense. It does, Your Honor. And the Supreme Court in Nijijuan explained that offense can mean one of two things. It can mean what's prescribed or what the defendant did on a particular occasion. So bearing in mind that that term can mean one of two things, it's appropriate to proceed down to the definition in 7I. So let's take it a level higher. The entire chapter starts with the word conviction. We're construing convictions. So how does that definition of offense, how are we not to understand it in the context of a conviction, a prior conviction? We're not arguing that Thayer needs to register because of something he did that didn't lead to a conviction. He was convicted of an offense. And because the term offense can mean one of two things, we need to read the statute as a whole, giving consideration to all of the words. And when you consider the whole thing, a conviction for an offense that involves conduct that by its nature is a sex offense against a minor, that points to considering the defendant's conduct. And one additional point on that, if Section 7I were to be read categorically, it would overlap almost entirely, if not completely, with the general definition of sex offense in 5A1. And the history of SORNA indicates that Congress wanted a broader definition for sex offenses against minors. And in order to do that, a circumstance-specific approach in 7I is required. And are you focusing on 7I as applied under 5A2? Your argument is not that 5A2 should always be addressed with the circumstantial approach, is it? We're not taking that position on this appeal. We're only arguing under 7I. I'd like to emphasize next the difference between SORNA and the Armed Career Criminal Act, because that statute gave rise to a lot of the cases that are addressed in both sides' briefs. The SORNA provision at issue here is part of a civil registration scheme. And Congress's intent in drafting that was to register sex offenders, but particularly child predators, as broadly as possible. And there is, of course, a criminal hook if you violate the civil registration scheme that can result in a new conviction. But the fact that it's a new conviction when someone violates SORNA means that there are safeguards that are not present with the ACCA. A SORNA defendant receives actual notice of his obligation to register and can only be convicted of violating SORNA if he knowingly fails to register. At trial, he has the opportunity to dispute whether his prior offense qualifies as a specified offense against a minor with all of the protections that a jury trial affords. And only if the government proves its case beyond a reasonable doubt can he be convicted. With the ACCA, we're dealing with sentencing enhancements. A judge enhances a defendant's sentence based on prior convictions that he may or may not have understood the consequences of. And due to those differences, the ACCA cases are not particularly instructive here. I do understand that argument about these are two different settings. How do you view the striking similarities in the structure and the text of the two statutes? So SORNA is talking about prior convictions. ACCA is talking about prior convictions. SORNA talks about its conduct, you know, the nature of any conduct, you know, as a definition to help define a sex offense against a minor. ACCA in the residual clause was talking about the nature and conduct to help define violent felonies. And this is separate and apart from the definition above that had referred to elements. Same with SORNA. There's a definition that refers to elements. We're not talking about that. And so even with ACCA, the Supreme Court said for that residual clause where we're not talking about elements in this part of the clause, we're not talking about enumerated offenses, we still apply the categorical approach. So here just viewing not purposes of the two different regimes, but the statute, the structure, and the text, they're awfully similar. There are, Your Honor. One important difference, most of the ACCA cases involve language that talks about an offense that by its nature presents a certain risk. Here it's conduct that by its nature presents a certain risk. So that's an important difference. And further, the categorical approach in the ACCA cases was driven by more than just the text of the statute. There were also concerns about a sentencing judge having to hold many trials at every sentencing on these old convictions. Here there's a whole new trial where the defendant has the opportunity to dispute the facts that led to his prior conviction. So there are meaningful differences. How do you address some of the practical concerns? So even if it's a new trial and the defendant can address it, we still might be talking as here a decades-old, two decades-old conviction. That's a problem for the government. The passage of time will typically make it more difficult for the government to prove its case. So respectfully, we think that's an insufficient reason to choose the categorical versus the circumstance-specific approach. The third point I'd like to make is that this case is not governed by this court's recent decision in United States v. Walker. Section 209.11 involves two steps in the registration process. The first step is whether the defendant qualifies as a sex offender at all, and that's what's at issue in this case. And Walker was about step two, which is how long that registration obligation lasts. Different subdivisions of 209.11 are involved in the two different inquiries. There really is no overlap, so Walker provides very little, if any, guidance in this case. The more appropriate case is Rogers, where this court examined very similar language, an offense involving consensual conduct, and found that that language required a circumstance-specific approach. You're into your rebuttal time, just so you know. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honor. May it please the Court. My name is Joe Bugney. I represent Tom Thayer. You stole my opening, 90 seconds, with your question, so I'm going to jump to really the heart of what I think is the flaws in the government's case. First, 5A is not rendered superfluous, if you would go with categorical analysis. 5A has sexual act and sexual contact, and that's different from sexual conduct. It would only go to actual touching. It wouldn't apply to sexting or many of the other behaviors that my clients sometimes engage in. The thrust of this argument is— But you're relying on 5A-1. Yes, the government's argument that this was superfluous, if you were to read it categorically. I understand. It is just like ACCA. When you have ACCA, you have conduct, and then we applied the categorical analysis to that, you know, conduct that otherwise involves. And the government misspoke. It wasn't ever by its nature. By its nature was really DiMaia, and by its nature was Davis. Those were the two cases, and both of those, when it came to 16B and 924C, the Court had no problem. It said, look, you have an elements clause, and then you have a residual clause. And in both of these, we're going to apply categorical analysis, because we're talking about convictions, we're talking about offenses. And courts can't be left to wonder what should be done. The dissents in both of those cases said, look, you know, this is really hard. You know, this means some people will get off. This means that, you know, this doesn't have the great breadth that we want. And in both cases, the Court said, too bad. This is the structure that we have. This is the structure that we have when we look at prior convictions. And here, if we're going to apply universally what my ACCA clients would get, what my undocumented immigrant clients would get, and my 924C clients would get, is a textualist reading. And a textualist reading of the statute is the one that we're asking this Court to apply. Applying the text, you say, by its nature, never means what happened on an individual basis. The Supreme Court has been absolutely clear on that. No, go ahead. I'm listening. No, Leocal, Davis, DeMille. Follow those, and it's going to say it has to be a categorical approach. Then go one step behind there and say it's an offense. We agree. An Asian one says it could go either way. But it doesn't say, like, well, okay, we just throw it out. No, it says we have to look at the textualist clues. What are the textualist clues there? And we say, well, there are adjoining provisions, and one would be inoperative because we don't have any tax evasions that are for $10,000. So, therefore, it clearly has to be the neighboring provision is circumstance-specific as to that one amount. But here the government wants to go right from the beginning. Right from the beginning we're going to go and look at what happened. And that's not what an Asian one says. An Asian one says to that particular fact. And I disagree that Walker is not instructive. I mean, Walker is a precise, well-written, thorough analysis of what the statute has to be. The statute says we begin with the categorical analysis, and only if the textualist clues go to one specific fact. And there it was, the age, because the overlap would have meant it's redundant. Here we don't have that. There's no redundancy here. There's no, you know, like, oh, the statute is somehow ineffective. Rather, as a district court noted, it makes the rest of the statute ineffective if we're just going to go and see what happened. Because why delineate all of those other sub-provisions? Why go through 5AI? Why not just write the statute? Whoever commits a felony offense in which a minor, you know, there is sexual contact with a minor or sexual conduct with a minor must register. That's the statute they want Congress to have written. But that's not the one they wrote. The one they wrote is precise. It delineates exactly what needs to be done and consistent with the Supreme Court's teaching. It needs to be applied categorically. Do you agree we would be creating a circuit split if we come down the way you're asking us to and affirm? Definitely creating a circuit split, and I think that's actually all the more reason. I think this is the best court in the country, not just because you guys are here, but because it's a textualist court. It's the one that actually sees it correctly. It's the one that saw Ruth correctly, that before anybody else saw what Shuler really meant, this court saw it in Ruth and said, look, there's actually two categorical analyses going on here. It's not just a generic offense. That provided bright lines for everybody. Everybody finally understood what the courts need to be doing and how we have certainty. It's no longer a guesstimate. It's no longer that we're like, I don't know, I mean, maybe, it's kind of close. No, instead it's like line up the elements. The elements here are aggressive, and aggressive ain't sexual. A spanking, you know, nobody likes child abuse. But the cases that we cite too, Atkins, Chandler, all of those are very clear. There's no sexual component that's necessary within the Minnesota statutes. We haven't talked about it yet, but given our opinion in Rogers, how can the categorical approach apply to the Romeo and Juliet exception? That's a good question. I want to answer it in two ways. So the first, the government on page 18 of its brief actually disavows that they're going to, you know, this is everything circumstance specific. If it's categorical, you know, they're not making any further argument. And they didn't do it in their opening brief, and they didn't do it in their reply. So it's right under subpoint heading four. So I don't think you have to actually reach that argument. I don't think you have to say. We may not, but assuming we do, how do you get around Rogers? I think you have to say that Rogers didn't have the full breadth of the understanding that we now have. We'd have to overrule Rogers? Yes. You'd have to circulate it. And I think the reason you would, Your Honor, is you'd say we now understand that involves doesn't have the weight that Rogers placed on it. But then you also have the idea that we don't have to get there because the Romeo and Juliet provision. We may not. You're right. We may not need to get there. But if we do, it seems that your position is in direct conflict to what we ruled in Rogers. It is. I mean, I've tried to distinguish as best I can. You know, hey, there was a guideline issue. But it's also like because it doesn't help with the initial textual analysis. Correct. Correct. It doesn't. But it also doesn't give rise to the same six or sorry, the Fifth Amendment polls that we would have upon why we would actually demand a more textualist reading. And we also don't have the benefit of Shuler. Rogers then comes out in 15. Correct. Right before you're having Mathis, DeCamps, Shuler, Ruth. And you're like, OK, now we kind of get it. The courts are marching along and the Supreme Court has spoken. You know, I think Rogers is right. Hey, five A.I., boom, categorical. But what do we do with this one provision? But again, we don't need to get there because I have an indivisible statute that is clearly, you know, criminalizes or punishes aggressive touching. So it doesn't reach sexuals. I don't need the Romeo and Juliet. Just went with belt and suspenders. Your Honors, I think there's one other small aspect that I'd like to touch on here. And it's that the soil with which this statute came with. And I think that's what Dodge and all of the cases that this would create a circuit split, what they missed. And reading the briefing there, it's almost everyone thought it began in 2006. You know, you're like, oh, first Adam Walsh Act and then we begin there. But you had to go back to the Wetterling Act. And once you saw the Wetterling Act says within this range of offenses, the Wetterling Act is Congress is signaling to the courts under the spending clause, sorry, to the states. Under the spending clause, you need to come up with what's the range of offenses. And this is just the baseline. You can go as far as you want. Georgia, it's robbery. I think the government correctly cites Arizona as burglary. Like, there's a litany of crimes. Minnesota, surprisingly, is murder. You have to register, you know, under that. And so the states are never bound to the limits prescribed by SORNA other than you can't go beneath them, but you can always go above them. And for those cases, the federal government is not involved. The federal government doesn't say, like, look, you know, you didn't register as a murderer, so you can't move to Illinois. It says, like, you know, guess what? Minnesota can govern itself and can watch over that. We're concerned with these categories of offenses. And in these categories of offenses, that's what you have to do. And Minnesota went beyond that with what it did here. It went with aggressive touching. It went with spanking. And that's not what, you know, we require people to register for. I think I'd like to just say, oh, go ahead, Your Honor. No, go ahead. No, no, you're the one. I'm listening. No, I didn't have a question. Your Honor, do you have a question? It's always good to see you. No, not yet. All right, well, I'm going to keep on going because I'm fighting for my client's life. I think there's one more really important aspect here, and that is the notice provision. The idea that Mr. Thayer has been told, and therefore, you know, like he somehow has this omniscience about what he has to do when it comes to registering. Well, he's told that he has to register for 10 years under a Minnesota statute. And he registers there until 2015, allegedly, when he travels and moves to Wisconsin. There's this idea that, well, you did it, so you know. But that's not what notice provides. Notice provides for the certainty to say, do I have to register federally? Does this provision apply to me? And it's not just in the ACCA context where you say, well, you didn't know the penalties. It's in every aspect of the law. Notice is at the heart of fairness. It's why Davis is such a beautiful opinion. They go through, and they're like, no, this is what we have to know. You have to have certainty. And the certainty that everyone demands in this court is a certainty that comes with a categorical analysis. And if you provide that certainty to everybody who might have an 851 for drugs, the same as you would to everybody who has to register as a sex offender, then you provide that clarity regardless of whether there's circuit split. And I think you are, you create the right circuit split. I think every court in this country after that follows it because the logic is so sound and because it's based upon the most recent Supreme Court cases. But when you go back to 08, and you look at Bynum, and you look at Dodge, when you look at Schofield, when you look at those cases, they didn't have the benefit. They didn't have the briefing, and they didn't have the instruction. And they definitely didn't have the idea that, like, look, the What Only Act talks about this as categories, as a range of behavior, and that soil is right here. And that soil is deep and thick with the categorical analysis. Judge Flomo, I'm looking for that question. Well, I'm a little concerned about the tenses. Okay. Let's talk about it. Past and present. All right. In the statute. What do you make of that? Well, I think the past tense is the most important one, and that is convicted. That's the tense that we really care about. And I think as far as the conduct, that actually is speaking to what the states have to understand it as. You know, that's why you have to view it through that guise of what was it originally passed for. Well, it's passive that the states know, hey, any offense that has this kind of conduct. You know, we got kidnapping, we got child solicitation, we got, you know, those aspects. But you need to go into your statute books and see what else would qualify. That's what I think that tense means, and that's why it's written in that manner. Because, you know, they just plop it right over. It gives that clear instruction. Does that satisfy your concern with that? Makes it a little murkier for me. All right. Tell me what would have been the better answer, and I'll adopt that. No, I, you know, I think it's a challenge. The statute is not an example of careful drafting, maybe. It's not an example of careful drafting. And in that case, you know, we go with the defense. Like, let the Congress change it. If somehow they didn't intend for a categorical analysis, then that's up to the Congress to change. You know, but I think they did ask for a categorical analysis. It's this range of offenses, and that's what they wanted. And sorry, I'll just add one other small point. The beauty of it, too, is that I stand with the DOJ's regulations. That's never happened before. The defense attorney never is like, you know, Your Honors, I really want you to go with the DOJ's regulations. The DOJ itself in smart guidelines is like, this is categorical. It's categorical because they understood what they were asking states to do. It's only now that they've shifted. They've shifted from their very own regulations. And I'm not saying they get Chevron deference, but they definitely reinforce my point. And they don't get Chevron deference because it's a clear statute. And it's so clear, despite the tenses, that it calls for a categorical analysis. And that's reaffirmed by the smart guidelines themselves and by the 97 guidelines. All of it speaks to you've got a category of crimes, you need to apply this category of crimes, and we're going to apply categorical analysis throughout. It's every neighboring provision. It's everything else that we go with the tenses of conduct. It's definitely by its nature, and it's certainly with convicted. So, Your Honors, I beg you. Despite the fact that it might create a circuit split, this is the right ruling. And Thomas Thayer demands the protection of the law that it be applied faithfully. It's a split with four other circuits. That's right. Your Honor, we never count numbers. And they're all based on bad decisions. The next one to deal with this is going to be like the Seventh Circuit all the way. That is the correct analysis. And if it does create the circuit split and it goes up to Supreme Court, you know how many justices we have on that side. Just faithfully apply the precedent. And it comes out a textless reading, and it comes out as a categorical analysis. If there's any other questions, thank you, Your Honors. No. Thank you. We have a little bit of rebuttal time left. I'd like to start with Mr. Bugme's argument that there's always a categorical part to these statutes and that there's always a hybrid approach. That's not true. That's only possible when there's a categorical component to the statute. So he used Walker as an example, saying that initially it calls for a categorical analysis before you get into the age of the victim. But Walker had a textual categorical hook. It asked to compare the predicate conviction to and asked whether it was comparable to or more severe than abusive sexual contact, as described in Section 2244 of Title 18. By contrast, 7i doesn't have a categorical hook. It goes right into conduct. So a hybrid approach here isn't possible. What about with the introductory language to 7i that does talk about an offense? An offense against a minor.  But that sort of language with a preposition, this court has also said in Rogers calls for a circumstance-specific approach when we're talking about a bunch of fact-based qualifiers, and the word against signals that here. The second point I'd like to address was Mr. Bugney's argument that 5A1 would not be rendered superfluous if we use a categorical approach for 7i because 5A1 only loops in contact-based offenses. That's not what the statute says. It says an offense involving an element of sexual contact or a sexual act. So if sexual contact is specifically spelled out, I'm not sure what work sexual act would be doing in that case. So I do think it would be rendered superfluous if we use a categorical approach for 5A1 and 7i. The last point I'd like to follow up on is notice. The appropriate lens here is an as-applied challenge, and then we're looking at actual notice. No one's disputing that Mr. Thayer received notice of his obligation to register as to how long that lasted or the details of it, what he understood. We don't have that in the record here because the district court dismissed the indictment. So that's an issue for trial. If the court has no further questions, I ask it to reverse the order of the district court and remand for further proceedings. Thank you. The case will be taken under advisement. Thanks to both counsel. Thank you.